UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CR-80022-RLR

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DESMOND SYLVESTER,
   a/k/a "Isaac Bryan"

        Defendant.

_____/

## AMENDED REPORT AND RECOMMENDATION ON MOTION TO DISMISS INDICTMENT [ECF No. 33][1]

Desmond Sylvester wants the Indictment charging him with illegal re-entry into the United States to be dismissed because (he claims) the Government violated the Bail Reform Act. I have reviewed the relevant pleadings. ECF Nos. 33, 43, 58. I heard oral argument on June 20, 2023. For the following reasons, the Motion to Dismiss should be DENIED.

### I.    PROCEDURAL HISTORY

Mr. Sylvester was arrested on February 3, 2023, aboard a vessel off the Atlantic coast of Florida. He was being smuggled into the United States. He was charged by Criminal Complaint with violating 8 U.S.C. § 1326(a). ECF No. 1.

---

[1] This Report and Recommendation is amended only to correct a typographical error in the first sentence.

Mr. Sylvester self-deported on November 1, 1998, and was later removed from the United States twice more — on November 26, 1998, and January 8, 2011. ECF No. 1 ¶10. He has two prior felony convictions: (1) a firearm violation on an unknown date and (2) illegal reentry after deportation in 2007. *Id.*

At his initial appearance on February 7, 2023, the Federal Public Defender was appointed to represent Mr. Sylvester; a pretrial detention hearing was scheduled for two days later on February 9. ECF No. 3. A preliminary hearing/arraignment was set for February 21. *Id.* After a hearing on February 9, I denied the Government's request for pretrial detention and ordered Mr. Sylvester released on a $50,000 personal surety bond with conditions. ECF No. 7. The bond was executed on February 9. ECF No. 8. By that point, the Department of Homeland Security had lodged an immigration detainer with the United States Marshal.

The United States Marshal transferred Mr. Sylvester to immigration authorities. He was taken to Baker County Facility in MacClenny Florida. ECF No. 12. I take judicial notice that Baker County is in the Middle District of Florida, approximately five hours' drive from West Palm Beach.

On February 15, 2023, the United States Attorney's Office moved for a writ of habeas corpus *ad prosequendum* requiring the United States Marshal to bring Mr. Sylvester to West Palm Beach for his arraignment on February 21. *Id.* Judge McCabe issued the writ on February 16. ECF No. 13. At oral argument, defense counsel proffered (without objection) that the Government sought the writ to prevent Mr. Sylvester from being deported. Defense counsel also proffered that Mr. Sylvester

had been willing to waive his appearance at the arraignment and the Government was aware of this fact when it requested the writ; however, Mr. Sylvester never executed a waiver of appearance pursuant to Fed. R. Crim. P. 10(c).

No arraignment was held on February 21 because Mr. Sylvester was still in immigration custody. ECF No. 14. Instead, Judge McCabe reset the arraignment for March 2. *Id.*

On March 1, Judge Rosenberg set the case for trial on April 24. ECF No. 26.

On March 2, Mr. Sylvester was still in immigration custody. ECF No. 27. Judge Matthewman reset the arraignment for March 9 to give the United States Marshal sufficient time to pick up Mr. Sylvester. *Id.* At some point between March 2 and March 9, Mr. Sylvester was transferred to United States Marshals' custody.

On March 9, Mr. Sylvester was arraigned in person in West Palm Beach. ECF No. 30. After the arraignment, Mr. Sylvester was not returned to immigration custody. He remained in Marshals' custody at the Palm Beach County jail.

On April 10, Mr. Sylvester filed the pending motion to dismiss the indictment. ECF No. 33.

On April 14, Mr. Sylvester moved to continue the trial. ECF No. 36. The Court granted the motion on April 19 and set a status conference for June 8. ECF No. 46.

On April 21, the United States Attorney's Office responded that the motion was moot because "the U.S. Marshals Service has told the government that they will be returning SYLVESTER back to [immigration] custody on Monday, April 24, 2023." ECF No. 43.

The record does not reflect when Mr. Sylvester was returned to immigration custody. On June 1, 2023, the United States Attorney's Office filed a notice saying that Mr. Sylvester had been released from immigration custody on May 24 under a stay of removal. ECF No. 55. On June 5, Mr. Sylvester moved to continue the trial. ECF No. 59. Judge Rosenberg reset the trial for August 14, 2023. ECF No. 60.

## II. DISMISSAL AS A REMEDY

An indictment can be dismissed for governmental misconduct only if there is "demonstrable prejudice, or substantial threat thereof." *United States v. Morrison*, 449 U.S. 361, 365-66 (1981); *see also, e.g., United States v. DeLuca*, 663 F. App'x 875, 878 (11th Cir. 2016) (showing of demonstrable prejudice required before dismissing indictment for violating attorney-client privilege); *United States v. Cosme*, 134 Fed. Appx. 391, 392 (11th Cir. 2005) (dismissal for grand jury misconduct requires showing of prejudice). The defendant bears the burden of showing that dismissal is appropriate. *United States v. Esformes*, No. 16-20549-CR, 2018 WL 5919517, at *3 (S.D. Fla. Nov. 13, 2018) (J. Scola).

## III. BAIL REFORM ACT (BRA)

"A person making an arrest within the United States must take the defendant without unnecessary delay before a [judicial officer]." Fed. R. Crim. P. 5(a)(1). At the initial appearance, the "judge must detain or release the defendant as provided by statute or by [the Federal Rules of Criminal Procedure]." Fed. R. Crim. P. 5(d)(3). The BRA sets the standards for determining whether the person will be detained or will

be released on conditions. *See* 18 U.S.C. § 3142 *et seq.*[2] If the judge sets a bond, a release order is entered and the defendant is no longer held in custody on the charge for which he was arrested. *See* 18 U.S.C. § 3142(a).

The BRA also allows for temporary detention where a noncitizen defendant may be subject to removal and "may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d)(1). In that circumstance, the "judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify . . . the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d). The immigration authorities have ten days to take the defendant into their custody. *Id.*

Even though a defendant receives a bond on the charge for which he was arrested, he may stay in custody if another law enforcement agency has invoked a legal process to take custody of him. For example, there may be an open arrest warrant. Or, there may be a detainer. A detainer is a request by a law enforcement agency that the custodian "hold the prisoner for the agency or notify the agency when release is imminent." *New York v. Hill*, 528 U.S. 110, 112 (2000). As relevant here, when a noncitizen subject to removal is in the custody of a federal, state, or local law enforcement agency, "[a]ny authorized immigration officer may at any time issue a

---

[22] The BRA also applies to persons charged with violating conditions of court supervision. *See, e.g.,* 18 U.S.C. § 3148 (violations of pretrial release conditions), Fed. R. Crim. P. 32.1(a)(6) (§ 3143(a) applies to alleged violations of supervised release). Those provisions are not at issue here.

5

Form I–247, Immigration Detainer–Notice of Action, to [the] other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7.

## IV. THE IMMIGRATION AND NATIONALITY ACT (INA)

The INA controls the process for taking deportable noncitizens into custody and removing them from the United States.[3] When a deportee returns to the United States without proper permission, the prior removal order is automatically reinstated. 8 U.S.C. § 1231(a)(5). The noncitizen "shall be removed under the prior order at any time after reentry." *Id.* Unless an exception applies, removal must occur within the statutory 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period starts to run on the later of (1) the date the removal order becomes administratively final or (2) "if the alien is detained or confined (except under immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(i), (iii).

---

[3] Except where citing the statutory text, I use the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g., Nasrallah v. Barr*, 590 U. S. ——, ——, n. 2, 140 S.Ct. 1683, 1689 n. 2, 207 L.Ed.2d 111 (2020).

"During the removal period, detention is mandatory." *Johnson v. Guzman Chavez*, 210 L. Ed. 2d 656, 141 S. Ct. 2271, 2281 (2021) (citing 8 U.S.C. § 1231(a)(2)).

> [T]he removal period may be extended in at least three circumstances, such that an alien remains detained after 90 days have passed. First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal. § 1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. § 1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. § 1231(a)(6); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

*Guzman Chavez*, 141 S. Ct. at 2281. "Individuals released after the removal period remain subject to terms of supervision." *Johnson v. Arteaga-Martinez*, 213 L. Ed. 2d 125, 142 S. Ct. 1827, 1832 (2022) (citing 8 U.S.C. § 1231(a)(6)).

A person who has illegally reentered the United States after being removed can be detained beyond the removal period.[4] The Government has discretion where to house a detained noncitizen; it may "arrange for appropriate places of detention for aliens pending removal or a decision on removal." 8 U.S.C. § 1231(g).

---

[4] This conclusion requires reading together several sections of the INA. Section 1231(a)(6) says that a person who is inadmissible under Section 1182 can be detained after the removal period. Section 1182(a)(9)(C) says an alien who has been previously ordered removed is inadmissible unless granted permission to be readmitted.

7

By statute, the Attorney General may stay a non-citizen's removal if "(i) immediate removal is not practicable or proper; or (ii) the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State." 8 U.S.C. § 1231(c)(2)(A). By regulation, removal can be stayed if the noncitizen "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States." 8 C.F.R. § 215.3(g); *see* 8 C.F.R. § 215.2(a) (authorizing deferred removal). An immigration officer "who knows or has reason to believe" that a noncitizen is a witness or party in a federal criminal case "shall temporarily prevent the departure of such alien from the United States." 8 C.F.R. § 215.2(a); *see also* 8 C.F.R. § 215.1(h) (defining "depart"); 8 C.F.R. § 215.1(i) (defining "deportation control officer"). A noncitizen temporarily prevented from departing the United States under § 215.2 can request an administrative hearing. 8 C.F.R. §§ 215.4; 215.5.

V.   DISCUSSION

Mr. Sylvester complains that (1) after his arraignment on March 9 he was improperly held in criminal custody until April 24, when he was returned to immigration custody, (2) if he had not been improperly held in Marshals' custody, he would have been removed before he could be prosecuted (as his co-defendant was), (3) he was denied effective assistance of counsel because he was held outside the Southern District of Florida. He says this conduct violated the BRA, the Sixth Amendment, and the Eighth Amendment.

When a prior deportee returns to the United States without proper permission, he simultaneously violates federal criminal law (and is therefore subject to prosecution) and violates federal immigration law (and is therefore subject to removal). Mr. Sylvester incorrectly argues, "The Government has to make a choice when it is dealing with a removable alien criminal defendant. It can forego prosecution, and detain and then remove the person through normal immigration proceedings or it can prosecute the person." *United States v. Galitsa*, No. 17-CR-00324, 2016 WL 11658188, at *5 (S.D.N.Y. July 28, 2016) (quoted in ECF No. 33 at 5). As seven Courts of Appeals (including the Second Circuit in a post-*Galitsa* decision) have held, "BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes." *United States v. Lett*, 944 F.3d 467, 471 (2d Cir. 2019); *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019) ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial."); *United States v. Soriano Nunez*, 928 F.3d 240, 247 (3d Cir. 2019) ("nothing in either the INA or the BRA gives a court the authority to require the Executive to choose which laws to enforce."); *United States v. Baltazar-Sebastian*, 990 F.3d 939, 945 (5th Cir.), cert. denied, 211 L. Ed. 2d 187, 142 S. Ct. 352 (2021) ("pretrial release under the BRA does not preclude pre-removal detention under the INA"); *United States v. Barrera-Landa*, 964 F.3d 912, 918 (10th Cir. 2020) ("the BRA does not give the district court authority to interrupt ICE's independent

9

statutory obligations to take custody of Mr. Barrera once he is released."); *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020) (no constitutional violation in proceeding simultaneously with criminal prosecution and removal proceedings); *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may . . . detain an illegal alien pending trial or sentencing regardless of a BRA release determination.")

Because prosecution and removal can proceed in parallel, three scenarios can arise. First, the Government declines to prosecute and proceeds solely with removal proceedings. Second, the Government prosecutes and the defendant is pretrial detained. Third (as here), the Government prosecutes and the defendant is released on bond in the criminal case.

The first two scenarios are easy. In the first, the BRA is not implicated and all proceedings occur under the INA. In the second, the noncitizen remains in criminal custody until the conclusion of the criminal case — including any sentence of incarceration — and is then turned over to the immigration authorities for removal proceedings.

The third scenario can be more complicated. The criminal case usually begins during the 90-day removal period. If the defendant posts bond in the criminal case, he is released from criminal custody, the immigration detainer attaches, he moves to immigration custody, where his detention initially is mandatory. But, he needs to attend further Court proceedings in the criminal case. The only way to get him to Court from immigration custody is with a writ. When the Court proceeding(s)

corresponding to the writ end, he should be returned to immigration custody. Rigidly following this procedure may require a series of writs for different court appearances. But, the logistics and time necessary to transfer custody or the timing of the court appearances may, as a practical matter, result in the noncitizen remaining in Marshals' custody after the purpose of the particular writ has ended.

Mr. Sylvester's case is a good example. After he was transferred to immigration custody, a writ was issued to bring him to West Palm Beach for his arraignment on the criminal charge, a one-day proceeding. The trial was set for six weeks later. It had taken approximately three weeks to retrieve him from immigration custody for his arraignment. Had the trial not been reset, it may have been logistically infeasible to return him to Baker County after arraignment and then retrieve him for trial.

Mr. Sylvester argues that the Government improperly held him in immigration custody for the purpose of detaining him pending trial. "So long as ICE detains the alien for the permissible purpose of effectuating his removal and not to 'skirt [the] Court's decision [in] setting the terms of [his] release under the BRA,' . . . ICE's detention does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019) (internal citation omitted). Mr. Sylvester proffered that the prosecution's purpose in seeking the writ of habeas corpus *ad prosequendum* was to prevent him from being deported before his criminal case could be resolved. The Government did not object to the proffer nor did it offer evidence to the contrary.

The Government did not commit misconduct in asking the Court to issue the writ for Mr. Sylvester. He was required to be present for his arraignment. To that end, the Government sought, and the Court issued, a writ to transport him to West Palm Beach for his arraignment. The arraignment was continued twice because Mr. Sylvester was still in immigration custody. There is nothing in the record to indicate defense counsel notified the Court that Mr. Sylvester wanted to waive his appearance. No written waiver was filed. Had timely notice been given or a waiver form filed, the Court could have cancelled the writ and left Mr. Sylvester in immigration custody.

Mr. Sylvester should have been returned to immigration custody after the arraignment. The petition for the writ only referenced that Mr. Sylvester was needed for his arraignment. Once he was arraigned, the purpose of the writ had been satisfied and he should have been returned to immigration custody. Therefore, he erroneously remained in Marshals' custody from on or about March 10 to on or about April 24.

Any error by the Government in obtaining the writ for the purpose of preventing removal, or in Mr. Sylvester not being promptly returned to immigration custody, was harmless. Mr. Sylvester complains that he was harmed by not being left in the hands of immigration authorities so that he could be deported before his criminal case could proceed. But, he was returned to immigration custody on April 24. What ultimately prevented his removal was that the United States Attorney's Office apparently eventually followed proper procedure and asked the immigration

authorities to stay Mr. Sylvester's removal. The evidence in the record does not prove that, if he had remained in immigration custody the entire time, Mr. Sylvester would have been removed before his removal was stayed.

In fact, his codefendant, Rafael Amin Feliz-Canario was indicted on the same day as Mr. Sylvester, was released on bond and arraigned on February 28 and transferred to immigration custody in Miami-Dade County. ECF No. 43. On March 3, Judge Rosenberg issued a writ to bring Mr. Feliz-Canario to West Palm Beach for trial on April 24. ECF No. 29. After the April 24 trial date was continued on April 19, the writ was not executed and Mr. Feliz-Canario remained in immigration custody. ECF No. 43. Apparently, no stay of removal was sought. Nevertheless, he was not removed from the United States until May 13. ECF No. 55.

Mr. Sylvester was not otherwise prejudiced by being held in Marshal's custody instead of being returned to immigration custody; he would have been in custody the whole time, anyway. During his post-arraignment time in Marshal's custody, he was not eligible for release from immigration custody because the 90-day mandatory-detention removal period did not expire until on or about May 9. And, because he illegally reentered the country, he could have been kept in immigration custody even after May 9.

Mr. Sylvester also argues that his Sixth Amendment right to counsel was violated because he was moved to Baker County. Mr. Sylvester has been at liberty and able to meet with counsel since on or about May 24. The trial is not to occur until August 14. There is ample time and opportunity for Mr. Sylvester to meet with

counsel and participate in his own defense. Whatever the effect, if any, that Mr. Sylvester's immigration detention had on his representation in his criminal case, he has not shown a violation of the Sixth Amendment.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss the Indictment.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 14th day of July 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE